IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

ANGELA DAWN MILLER,

       Petitioner,

v.                              Case No. 5:20-cv-00661

J.D. SALLAZ, Superintendent,
Lakin Correctional Center,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 1) and Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus as Untimely Filed (ECF No. 10). This matter is assigned to the Honorable Frank W. Volk, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

### A.    The petitioner's criminal conviction and direct appeal.

On August 19, 1994, Petitioner was convicted of first-degree murder, without a recommendation of mercy, following a four-day jury trial in the Circuit Court of Wyoming County, West Virginia. *State v. Miller*, No. 94-F-18. (ECF No. 1; ECF No. 10, Ex. 1 at 1). Petitioner was initially represented by retained counsel, Louise G. Staton, with the assistance of W. Richard Staton ("Rick Staton"). When her funds were exhausted, Rick Staton and G. Todd Houck were appointed to represent Petitioner and served as her counsel during her criminal trial and direct appeal.

The evidence at trial demonstrated that Petitioner shot and killed Jerry White ("White") outside Tucky's bar in Wyoming County on October 9, 1993. *State v. Miller*, 476 S.E.2d 535, 540-41 (W. Va. 1996).[1]  Petitioner spent the afternoon and evening of the murder drinking with family and friends before going to Tucky's around 1:00 a.m. *Id.*  Among those with Petitioner were her father, Billy Miller ("Billy"), and her roommate and alleged romantic partner, Tina Reed ("Reed"). *Id.*  Both Petitioner and Billy took firearms with them to the bar.[2]  *Id.*

Upon arrival at the bar, the group encountered White, whom Reed had previously dated. *Id.*  Numerous witnesses gave conflicting accounts of the events inside and outside the bar and the circumstances surrounding the shooting, but such testimony consistently demonstrated that there was an argument between the Millers, Reed, and White that resulted in an altercation outside the bar during which Petitioner fired five shots at White, striking him four times. *Id.* at 541-42.  Medical evidence revealed that three of the four shots were fatal and White died at the scene. *Id.* at 542-43.  Petitioner and Reed fled the scene and hid in the vicinity for some time before turning themselves into law enforcement. *Id.* at 542.  The officer who transported Petitioner to the police station testified that she was coherent and did not appear to be intoxicated. *Id.*

At trial, Petitioner testified that she remembered retrieving a gun from her father's house and sticking in her pants before going to the bar. *Id.* at 541-422.  She further stated that she did not know that White would be at the bar and had never met him before.

---

1  The complete trial transcript is not part of the record before this court.  This summary of evidence is derived from the Supreme Court of Appeals of West Virginia's opinion in Petitioner's direct appeal. *State v. Miller*, 476 S.E.2d 535 (W. Va. 1996).

2  Petitioner allegedly had a .38 revolver and Billy had a 9-millimeter handgun.  476 S.E.2d at 541.

*Id.* at 543.   However, through Reed, she knew that White had a "reputation for drinking and fighting," had allegedly threatened and beaten Reed and other women in the past, and had specifically threatened Petitioner.   *Id.*   While she did not deny shooting White, Petitioner claims to have no memory of doing so, due to her level of intoxication and having ingested several Valium pills.   *Id.* at 541.   Thus, she argued that the evidence did not support a conviction for first degree murder because the State failed to establish the requisite mental state of premeditation.   *Id.*   Alternatively, Petitioner argued that she acted in self-defense or defense of others.   *Id.*   Nonetheless, the jury found Petitioner guilty of first degree murder and did not recommend mercy.   By order entered on October 27, 1994, Wyoming County Circuit Court Judge John S. Hrko sentenced Petitioner to life without mercy.   (ECF No. 10, Ex. 1 at 2).[3]   Petitioner filed a motion for a new trial, which was denied by the circuit court on December 14, 1994.   (*Id.* at 3).

Petitioner then filed a direct appeal in the Supreme Court of Appeals of West Virginia ("SCAWV") in which she raised the following assignments of error:   (1) the indictment misinformed the jury as to the elements of first degree murder; (2) the jury was not properly qualified to hear the evidence; (3) the jury was improperly instructed; (4) the prosecuting attorney made improper and prejudicial statements; (5) the grand jury was intentionally mislead by the state; and (6) ineffective assistance of counsel constituting plain error.   (*Id.* at 3).   On June 14, 1996, the SCAWV affirmed the Petitioner's conviction.   (ECF No. 1, Ex. 2).

---

3  When citing to documents docketed in this Court's record, the undersigned will use the document number and pagination found at the top of each page of the documents as docketed in the Court's Electronic Case Filing ("ECF") system and will cite the same as "ECF No. ____, Ex. ____ at ____").   Thus, the cited pagination may not match the original pagination contained in the document itself.

**B.    First habeas corpus petition (Case No. 01-C-151) and appeal (Case No. 032517).**

Following the SCAWV's 1996 opinion affirming her conviction, Petitioner did not further challenge her conviction and sentence until August 21, 2001, when by new counsel, James B. Billings, she filed an Omnibus Petition for Writ of Habeas Corpus in the Circuit Court of Wyoming County (Case No. 01-C-151) ("first petition").    (ECF No. 10, Ex. 3).   That petition raised 25 grounds for relief, including: (1) insufficient indictment; (2) improper indictment; (3) prejudicial pretrial publicity; (4) denial of right to speedy trial; (5) denial of counsel of choice; (6) incompetence at time of crime; (7) not allowed to knowingly participate in defense; (8) suppression of exculpatory evidence during grand jury proceedings; (9) state's use of perjured testimony; (10) denial of preliminary hearing; (11) irregularities or errors in arraignment; (12) composition of grand jury; (13) defects in indictment; (14) improper venue (which is really a challenge based on pretrial publicity and alleged bias concerning Petitioner's homosexual lifestyle); (15) pre-indictment delay; (16) refusal to allow witnesses of Petitioner's choice/exclusion of expert medical evidence; (17) constitutional errors in evidentiary rulings; (18) improper jury instructions; (19) prejudicial statements to the jury by the prosecution; (20) absenteeism of Petitioner during critical portions of the criminal trial; (21) improper communications with jurors; (22) excessive sentence; (23) improper admission of witness statements; (24) instructional error concerning self-defense instruction; and (25) ineffective assistance of counsel (which contained 57 sub-parts).   (Ex. 3 at 2-20).

On February 15, 2002, the circuit court denied and dismissed, with prejudice, all grounds raised in the first petition except for Petitioner's claim concerning improper

communication with the jurors.   (ECF No. 10, Ex. 4).   After an evidentiary hearing, the circuit court fully denied Petitioner's first habeas corpus petition on July 19, 2002. (ECF No. 10, Ex. 5).   On August 1, 2002, Petitioner filed a Notice of Intent to Appeal and perfected the appeal on or about November 19, 2003 (Case No. 032517).   (ECF No. 10, Exs. 6 and 7).   The SCAWV refused the petition for appeal on February 25, 2004.   (ECF No. 10, Ex. 8).

### C.     Second habeas corpus petition (Case No. 040815).

On April 29, 2004, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the SCAWV under its original jurisdiction (Case No. 040815) ("second petition").   (ECF No. 10, Ex. 9).   The second petition reasserted Petitioner's claims concerning the sufficiency of evidence to support first degree murder, the suppression of exculpatory evidence (including expert testimony of the effects of alcohol on the ability to premeditate and deliberate), and prejudicial comments by the court.   (*Id*.)

On or about August 26, 2004, Petitioner filed an Amendment to Writ of Habeas Corpus in which she asserted that, on May 10, 2004, she received a message from Linda Farren ("Farren"), one of her trial jurors, who allegedly advised her that she did "not vote guilty" and that the "judge sent a message to the jury deliberation room saying that whoever voted not guilty had better vote guilty or he (Judge Hrko) would say that they voted guilty himself because he didn't want to sequester the jury for the weekend[.]" (ECF No. 10, Ex. 10 at 1).   However, Petitioner provided no affidavit from Farren or any other information verifying this allegation or even proving that Farren had contacted her. (*Id*. at 1-2)   On September 30, 2004, the SCAWV summarily refused the writ prayed for by Petitioner.   (ECF No. 10, Ex. 11).

### D.    Third habeas corpus petition (Case No. 04-C-320).

On December 2, 2004, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in the Circuit Court of Wyoming County ("third petition"), which was assigned Case No. 04-C-320.   (ECF No. 10, Ex. 1 at 4 and Ex. 12).   The third petition repeated some of Petitioner's claims concerning ineffective assistance of trial counsel, excessive sentence, and exclusion of expert evidence, and further relied on new medical evidence indicating that Petitioner suffered from a brain abnormality ("arteriovenous malformation" or "AVM"), which she claimed demonstrated that she lacked the requisite mental state for first degree murder at the time of the crime.   (ECF No. 10, Ex. 1 at 4-5 and Ex. 12 at 2-4). That petition did not appear to address any juror misconduct.   The circuit court summarily denied the third petition on March 17, 2005, specifically finding that the new medical evidence did not satisfy the requirements for granting a new trial and that Petitioner's other claims had been previously and finally adjudicated.   (ECF No. 10, Ex. 12 at 4).

### E.    Subsequent filings in Criminal Case No. 94-F-18.

On July 27, 2007, Petitioner filed a *pro se* motion for appointment of counsel for the purpose of filing yet another habeas corpus petition.   However, the circuit court denied that motion on August 2, 2007.   (ECF No. 10, Ex. 1 at 5-6).[4]   Then, on January 29, 2008, Petitioner filed an untimely *pro se* motion for reduction of sentence under West

---

4   According to this order, the motion for appointment of counsel (which is not a part of the record before this court) indicated that Petitioner sought to file a special habeas corpus petition under *Matter of W. Va. State Police Crime Lab*, 190 W. Va. 321 (1993) and *In re Renewed Investigation of State Police Crime Lab., Serology Div.*, 219 W. Va. 408 (2006) ("*Zain III*").   However, the circuit court found that, because serology evidence was not introduced at Petitioner's trial, those decisions were not relevant to her case and, thus, review thereunder was not warranted.   (ECF No. 10, Ex. 1 at 5-6).

Virginia Rule of Criminal Procedure 35(b), which was denied by the circuit court on January 31, 2008.   (ECF No. 10, Ex. 1 at 6).

### F.    Subsequent filings in Civil Case No. 04-C-320 (fourth and fifth habeas corpus petitions).

On July 17, 2009, Petitioner filed a *pro se* Petition for Writ of Mandamus seeking various documents for use in preparing another habeas corpus petition.   (ECF No. 10, Ex. 13).   On February 5, 2010, the circuit court (by Circuit Judge Warren R. McGraw) treated the mandamus petition as a motion for appointment of counsel and appointed Lela D. Walker ("Walker") as counsel for the purpose of investigating and filing a new habeas corpus petition on Petitioner's behalf.   (ECF No. 10, Ex. 14).   On December 5, 2011, Walker filed a Motion for Extension of Time to Submit Habeas Petition.   (ECF No. 10, Ex. 15).   The motion indicated, in part, that Walker had "retained the services of a private investigator to interview jurors that may still be living." (*Id*.)   On December 6, 2011, the circuit court granted the motion for extension of time and ordered that Petitioner's new habeas petition be filed by March 1, 2012.   (ECF No. 10, Ex. 16). However, sometime thereafter, another change of counsel occurred, and Petitioner was subsequently represented by Mark Hobbs ("Hobbs").

On September 23, 2013, Petitioner, by Hobbs, filed an Amended Petition for Writ of Habeas Corpus ("fourth petition"), which was docketed in Case No. 04-C-320.   (ECF No. 10, Ex. 17).   In her fourth petition, Petitioner acknowledged that, by virtue of her direct appeal and prior habeas proceedings, "the issues of improperly drafted indictment, qualifications of the jury, [and] improper jury selection process . . . have previously been fully adjudicated."   (*Id*. at 2).   Petitioner further acknowledged that the denial of her

habeas appeal in Case No. 01-C-151 "fully adjudicated the issues of sufficiency of the evidence to support a conviction of first degree murder and suppression of exculpatory evidence[.]"  (*Id.*)  Finally, Petitioner acknowledged that her claims of ineffective assistance of counsel and sufficiency of evidence "had already been fully adjudicated and thus cannot be adjudicated herein."  (*Id.*)

However, in accordance with an accompanying *Losh* checklist,[5] the fourth petition summarily sought to pursue claims concerning Petitioner's mental competency at the time of trial, coerced confessions, suppression of helpful evidence, irregularities in arrest, challenges to the composition of the grand jury, refusal of continuance, refusal to turn over witness notes after testifying, constitutional errors in evidentiary rulings, instruction error, prejudicial statements by prosecutor, and improper communications with the jury. (*Id.* at 3).  On January 21, 2014, the circuit court (Judge Charles M. Vickers by special assignment) summarily denied Petitioner's fourth petition because the claims were without any factual support and, more importantly, were barred by the doctrine of res judicata.  (ECF No. 10, Ex. 18).

On February 24, 2014, Petitioner, by counsel, filed a Motion to Set Aside or Grant Relief from the Court's January 21, 2014 Order Denying Amended Petition.  (ECF No. 10, Ex. 19.)  That motion was denied by the circuit court on April 8, 2014.  (ECF No. 10, Ex. 20).

On May 8, 2014, Petitioner appealed the circuit court's January 21, 2014 Order Denying Amended Petition, as well as the court's April 8, 2014 Order Denying Motion to

---

5  *See Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981).

Set Aside or Grant Relief.   (ECF No. 10, Ex. 21).   On April 13, 2015, the SCAWV issued a memorandum decision affirming the circuit court's decisions.   *Miller v. Nohe*, No. 14-0482, 2015 WL 1740514 (W. Va. Apr. 13, 2015) (ECF No. 10, Ex. 22).[6]

On April 18, 2016, Petitioner filed another habeas petition ("fifth petition"), alleging ineffective assistance by habeas counsel Hobbs.   (ECF No. 10, Ex. 1 at 8; Ex. 23 at 2).   That petition was also docketed in Case No. 04-C-320.   It did not address any claims of juror misconduct.   The circuit court (Judge Vickers) denied that petition on June 10, 2016, finding that Petitioner could not demonstrate the requisite prejudice from any deficient conduct by Hobbs because all claims for relief raised by Hobbs were barred by Petitioner's prior post-conviction proceedings.   (ECF No. 10, Ex. 1 at 8; Ex. 23 at 6). Petitioner did not appeal that decision to the SCAWV.

### G.    Sixth habeas corpus petition (Civil Case No. 17-C-96).

On June 27, 2017, Petitioner filed yet another *pro se* Petition for Writ of Habeas Corpus in the Circuit Court of Wyoming County (Case No. 17-C-96) ("sixth petition"), which was specially assigned to Judge Rudolph J. Murensky, II.   (ECF No. 10, Ex. 1 at 9; Ex. 25).[7]   In addition to reasserting several claims of ineffective assistance of counsel, the

---

6  On October 15, 2015, Petitioner filed a Petition for a Writ of Error Coram Nobis seeking to again litigate the sufficiency of evidence to support her first degree murder conviction.   However, the circuit court summarily denied that petition by order entered on February 18, 2016.   (ECF No. 10, Ex. 1 at 8).   That petition and order are not a part of the record before this court and are not addressed in Respondent's brief. Because that petition concerned only Petitioner's sufficiency of evidence claim, and did not in any way address her claims of juror misconduct, the undersigned finds that, to the extent that it is even considered to be a properly-filed post conviction petition for collateral review, it has no effect on the running of the statute of limitations for Ground Three of the § 2254 petition under 28 U.S.C. § 2244(d)(1)(D) as addressed *infra* and will not be further discussed herein.

7  This petition was also initially docketed in Case No. 04-C-320 (ECF No. 10, Ex. 24) on November 22, 2016, but no action was taken on it.   Thus, on February 27, 2017, Petitioner filed a mandamus petition in the SCAWV, seeking action on the petition by Judge Vickers.   (ECF No. 10, Ex. 26).   Judge Vickers responded to the mandamus petition asserting that, due to his prior final rulings on the petition documents docketed in Case No. 04-C-320, the subject petition should have been assigned a new civil case number and that he believed he had no authority to address the matters therein.   (ECF No. 10, Ex. 28).   Thereafter, the

sixth petition alleged, for the first time, that juror Farren, the same juror who allegedly claimed she felt pressured to render a guilty verdict by Judge Hrko (hereinafter "jury pressure claim"), also lied under oath and failed to disclose pertinent information during voir dire.   (ECF No. 10, Ex. 1 at 23-24; Ex. 25 at 47).   Specifically, Petitioner claimed that Farren's sister, brother and nephew were involved in a violent incident in March of 1993 (prior to Petitioner's trial) that resulted in them being charged with unlawful wounding in Kanawha County, West Virginia, four months after Petitioner's trial.   Petitioner contended that she learned of this "traumatic event" in October of 2016, while incarcerated in the same prison as Farren's sister.[8]   Petitioner claimed that Farren's failure to disclose this information during voir dire was "newly discovered" evidence of juror misconduct and bias, which should have disqualified Farren from serving on her jury (hereinafter "juror disqualification claim").   (ECF No. 10, Ex. 1 at 23-24; Ex. 25 at 47).   Petitioner further claimed that she was entitled to a new trial based on her counsel's failure to ask the jurors questions that would have elicited such prejudicial information. (ECF No. 10. Ex. 1 at 23-24; Ex. 25 at 47).

        In its October 9, 2018 order denying her sixth habeas petition, the circuit court acknowledged that Petitioner's juror disqualification claim had not been previously adjudicated and noted that Petitioner claimed that, although she discovered the basis of the jury pressure claim on May 10, 2004, she was not aware of the juror disqualification claim until October of 2016.   (ECF No. 10, Ex. 1 at 23-24).   The circuit court denied these

---

SCAWV refused the mandamus petition.   (ECF No. 10, Ex. 29).   Petitioner then refiled an identical habeas petition in the circuit court on June 27, 2017, and it was assigned Case No. 17-C-96.   (ECF No. 10, Ex. 25).
[8]   Petitioner contended that she "did not realize and could not confirm until October 2016 that the event in question occurred in 1993."   (ECF No. 10, Ex. 25 at 47).

claims and found that Petitioner did not actually establish the familial relationship between Farren and the parties involved in the 1993 assault, or that Farren was aware that they were the perpetrators of that crime at the time of Petitioner's trial.   (ECF No. 1, Ex. 1 at 25-27).   Likewise, the court found that Petitioner had not demonstrated, by actual evidence, that Farren felt rushed to judgment, and that Farren's response during the polling of the jury at the conclusion of the trial contradicted that assertion.   (*Id.* at 27-28).   The court further found that Petitioner had not demonstrated that the disclosure of any of those facts would have produced an opposite result at a second trial.   (*Id.* at 27).

On November 14, 2018, Petitioner filed her notice of appeal concerning the denial of her sixth petition.   (ECF No. 10, Ex. 30).   Petitioner again raised claims concerning insufficiency of evidence of premeditation, ineffective assistance of counsel, and the jury pressure and juror disqualification claims (collectively referred to as "juror misconduct claims").   (*Id.*)   Petitioner claimed that she had been denied an evidentiary hearing on these issues and should have had counsel appointed to assist her in presenting those claims.   (*Id.*)

On June 3, 2020, the SCAWV issued a memorandum decision affirming the denial of Petitioner's sixth habeas petition.   *Miller v. Sallaz*, No. 18-1001, 2020 WL 2904844 (W. Va. June 3, 2020).   (ECF No. 10, Ex. 31).   The SCAWV ruled that all claims, other than those relating to juror misconduct, had been thoroughly and finally adjudicated in Petitioner's direct appeal and previous habeas petitions.   (ECF No. 10, Ex. 31 at 3-4). The SCAWV also found that the juror misconduct claims were based upon speculation and determined that the circuit court correctly concluded that there was "no evidence that the juror knew of the criminal activity involving her family members at the time of

petitioner's trial." (*Id.* at 3-4). The SCAWV further concluded that "the polling of the jury, and the juror's explicit agreement with the verdict, dispelled petitioner's allegation that the juror was 'rushed' into voting." (*Id.*)

### H.    Instant section 2254 petition and motion to dismiss.

On October 8, 2020, Petitioner filed the instant petition under 28 U.S.C. § 2254, asserting the following grounds for relief:    (1) Petitioner was denied the presentation of her psychiatric evaluation at trial; (2) ineffective assistance of trial counsel, appellate counsel, and habeas counsel[9]; (3) new evidence that juror answered falsely in her voir dire as to whether she or her immediate family had been involved in violence; (4) improper questioning as to Petitioner's homosexual lifestyle in voir dire; and (5) "the forensics of this case don't match up." (ECF No. 1 at 5-10, 20-21).

On October 1, 2021, Respondent filed a Motion to Dismiss (ECF No. 10), asserting that Petitioner's § 2254 petition is untimely and there is no basis to equitably toll the statute of limitations concerning any of her claims for relief. On November 5, 2021, Petitioner responded to the motion to dismiss. (ECF No. 14).

In pertinent part, Petitioner's response asserts that Respondent's Exhibits 15 and 16 in support of the motion to dismiss should be stricken from this court's record because she had allegedly never seen those documents before. (*Id.* at 2). She further claims that she does not recall meeting with her habeas counsel and an investigator on August 25, 2011, as demonstrated by attorney billing records she provided, and that the billing records further fail to establish what, if any, investigation was done by those individuals

---

9  Claims concerning ineffective assistance of habeas counsel are not cognizable in federal habeas corpus. *See* 28 U.S.C. § 2254(i).

or whether any meetings with jurors had occurred.    (*Id.* at 2-3, 18 (Ex. D)).    Petitioner's

response further relies upon her Rule 60(b) motion and an affidavit from habeas counsel

Hobbs suggesting that he had "misplaced" a disk containing Petitioner's trial transcripts

and, consequently, filed a summary petition on September 27, 2013, with the intent of

filing a supplement containing a more detailed factual basis for the claims raised therein.

(*Id.* at 3 and 29-33 (Exs. G-1 and G-2)).    Petitioner appears to offer this evidence to

establish why she failed to raise her claims concerning juror misconduct at that time.

Petitioner further appears to be seeking equitable tolling of the statute of

limitations because of her low IQ and educational level, her need to rely on inmate law

clerks for assistance, ooand her alleged lack of sufficient access to resources at Lakin

Correctional Center to pursue available federal remedies.    (*Id.* at 4).    Petitioner further

contends that the statute of limitations with respect to Ground Three of her petition (the

juror misconduct claims) should run from the SCAWV's September 11, 2020 order

denying her motion for rehearing of her appeal on her sixth habeas corpus petition.    (*Id.*)

Respondent did not file a reply brief.    This matter is ripe for adjudication.

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104—132,

110 Stat. 1214 ["AEDPA"], effective April 24, 1996, provides federal habeas relief to state

prisoners who are "in custody in violation of the Constitution or laws or treaties of the

United States."    28 U.S.C. § 2254(a).    28 U.S.C. § 2244(d)(1) prescribes a one-year

period of limitation governing the filing of § 2254 habeas petitions that runs from the

latest of one of four specified events:    (A) the date on which the judgment became final,

by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence.    28 U.S.C. § 2244(d)(1); *see also Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009).[10]

Although Petitioner was convicted before the effective date of AEDPA, as further explained below, her judgment became final thereafter; thus, AEDPA governs her case. For the reasons addressed below, Petitioner's petition was not timely filed.    To the extent that Petitioner claims that the untimely filing of her petition is excused by tolling principles, those arguments are without merit, and, thus, the petition should be dismissed as being untimely pursuant to 28 U.S.C. § 2244(d)(1).

### A.    The petition is untimely under 28 U.S.C. § 2244(d)(1)(A).

The first critical date used to determine the timeliness of Petitioner's petition is the date her judgment became final, by the conclusion of direct review, or the expiration of the time for seeking such review.    28 U.S.C. § 2244(d)(1)(A).    "A judgment becomes final: (1) when the opportunity to appeal the [trial] court's judgment expires; (2) when the time expires for filing a petition for certiorari contesting the appellate court's

---

[10]    In the present proceedings, subsection (B) is not applicable because Petitioner has not alleged that she was prevented from filing a petition by government action.    Nor is subsection (C) applicable because Petitioner's claims do not rely on any new, retroactively applicable Supreme Court precedent.    Thus, the undersigned will only address the application of subsections (A) and (D) herein.

affirmation of the conviction; or (3) when the Supreme Court of the United States denies certiorari." *Riley v. Vest*, No. 5:17-cv-02367, 2018 WL 616160, at *3 (S.D.W. Va. Jan. 5, 2018), *report and recommendation adopted,* 2018 WL 606208 (S.D. W.Va. Jan. 29, 2018) (internal quotations and citations omitted).    Here, the SCAWV affirmed Petitioner's convictions in a published opinion issued on June 14, 1996.    *See Miller*, 476 S.E.2d 575 (W. Va. 1996).    (ECF No. 10, Ex. 2 at 54).    Petitioner did not petition for certiorari in the United States Supreme Court.    Thus, her one-year limitation period under subsection (A) commenced on September 12, 1996 (90 days after the affirmance of her judgment by the SCAWV on June 14, 1996).    Therefore, Petitioner was required to file a § 2254 petition on or before September 12, 1997, which she did not do.

The one-year statute of limitations is subject to certain exceptions and tolling doctrines.    *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that "§ 2244(d) is subject to equitable tolling in appropriate cases").    The statute itself expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."    28 U.S.C. § 2244(d)(2); *see also Holland*, 560 U.S. at 661 (noting that § 2244(d) "expressly tolls the limitations period during the pendency of a properly filed application for state collateral relief.") (Scalia, J., dissenting, in part).    Petitioner, however, did not file a state petition for post-conviction relief until August of 2001, almost five years after her judgment became final.    Accordingly, there was no tolling event under § 2244(d)(2) during that time and the statute of limitations under § 2244(d)(1)(A) expired on September 12, 1997. Thus, her October 8, 2020 § 2254 petition is clearly untimely under § 2244(d)(1)(A).

**B.      There is no basis for equitable tolling of the statute of limitations.**

Because Petitioner's § 2254 petition is untimely under § 2244(d)(1)(A), her petition may only be considered if this federal court concludes that "equitable tolling" of the statute of limitations is warranted.  *Holland*, 560 U.S. at 649.  The United States Supreme Court has concluded that a petitioner is "'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Id.* (citation omitted).  In an apparent acknowledgment of the untimeliness of her federal habeas petition, Petitioner states that she "believes the error brought forth will fall into the exceptions that will allow for her Petition to go forward" and that "it took the same legal counsel five years to file the first petition of habeas corpus after receiving the opinion from the direct appeal[.]"  (ECF No. 1 at 14).

Petitioner first attempts to excuse her untimely petition by claiming that neither her counsel nor the court advised her of the AEDPA statute of limitations.  However, there is no obligation of the court or counsel to do so.  *See Miranda v. Castro*, 292 F.3d 1063 (9th Cir. 2000) (declining to grant equitable tolling where state court counsel provided inaccurate advice about the federal filing date on the ground that the petitioner had no right to the advice and it could not have been constitutionally ineffective); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) ("ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing"); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991) (lack of knowledge of applicable filing deadlines is not a basis for equitable tolling of statute of limitations); *Bohanan v. Moore*, No. 2:15-cv-2973, 2016 WL 7034239, at *2 (S.D. Ohio Dec. 2, 2016), *report and*

16

*recommendation adopted*, 2017 WL 128522 (S.D. Ohio Jan. 12, 2017) (counsel has no obligation to advise Petitioner about his obligation to file a federal habeas corpus action within one year of the date that the state court conviction became final).   Petitioner further points to her habeas counsel's failure to file her initial habeas petition until approximately five years after the SCAWV's decision in her direct appeal as a reason to equitably toll the statute of limitations.   (ECF No 1 at 14; ECF No. 10, Ex. 2).   This assertion also fails as a basis for equitable tolling.

"[I]neffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during post-conviction proceedings."   *Manning v. Epps*, 688 F.3d 177, 185 (5th Cir. 2012) (quotation and citation omitted); *see also United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008) (holding that lower court abused its discretion in determining that "incorrect legal advice" entitled petitioner to equitable tolling); *Doe v. Menefee*, 391 F.3d 147 175 (2d Cir. 2004) (recognizing that "retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition.").   Moreover, "pro se petitioners are expected to comply with AEDPA's statute of limitations, [and therefore] it would be unfair to expect less from petitioners who are represented by counsel."   *Epps*, 688 F.3d at 185, citing *Menefee* 391 F.3d at 175; *see also, Ross v. Verano*, 712 F.3d 784, 799-800 (3d Cir. 2013) (stating that the "fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling.").   Thus, even if Petitioner's counsel was to blame for the delay in filing her initial state habeas petition and, thereby, failing to toll the federal statute of limitations, "[a]n attorney's actions are imputed to his client," *Gray v. Ballard*, 848 F.3d

17

318, 323 (4th. Cir. 2017) (citing *Holland v. Jackson*, 542 U.S. 649, 653 (2004)). Therefore, that fact does not entitle Petitioner to equitable tolling of the one-year limitation period for filing a federal habeas corpus petition.

### C.    Application of § 2244(d)(1)(D) to Ground Three.

While Petitioner's other claims are clearly time-barred under § 2244(d)(1)(A), with respect to Ground Three of her § 2254 petition, there may be a basis to run the one-year statute of limitations from an alternative date under § 2244(d)(1)(D).   For the purposes of subsection (D), the one-year limitations period is deemed to commence on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).   As noted by Respondent, "factual predicate" means "evidentiary facts or events, and not court rulings or legal consequences of the facts." *Holmes v. Spencer*, 685 F.3d 51, 59 (1st Cir. 2012).   (ECF No. 11 at 16).

The crucial factor for application of § 2244(d)(1)(D) is whether Petitioner can demonstrate that she exercised "due diligence" in ascertaining the requisite evidence. "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." *Gray*, 848 F.3d at 323 (internal quotations and citations omitted).   The determinative question is whether the information could have been discovered, not whether it actually was discovered.   *See In re McDonald*, 514 F.3d 539, 545 (6th Cir. 2008) (holding that petitioner could not have discovered facts which supported successive habeas petition when such facts were based upon a witness' recantation of trial testimony following initial habeas petition); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (holding that "[u]nder long-established

principles, petitioner's lack of diligence precludes equity's operation").

In Ground Three, Petitioner contends that, in October of 2016, she learned that juror Farren allegedly lied during voir dire when she failed to disclose a violent incident in which several of her family members were implicated and charged with unlawful wounding.   (ECF No. 1 at 8, 20).   This specific claim was first raised in Petitioner's sixth habeas petition filed in the circuit court on June 27, 2017.   (Ex. 25 at 47).   However, this was not the first claim Petitioner had raised with respect to juror Farren.

As addressed in detail above, in the amendment to her second habeas petition, filed in the SCAWV on August 26, 2004, Petitioner claimed that Farren had contacted her on or about May 10, 2004, and advised her that Judge Hrko had pressured the jury to render a verdict so that he would not have to sequester them over the weekend and, thus, she felt compelled to convict Petitioner.   (ECF No. 10, Ex. 10).   However, Petitioner provided no actual evidence to support that contention and the SCAWV refused that petition on September 30, 2004.   (ECF No. 10, Ex. 11).

Over twelve years later, Petitioner allegedly learned that juror Farren's family had experienced a "traumatic event" prior to her trial, resulting in the subsequent arrest and conviction of her sister and other family members for unlawful wounding, and that Farren failed to disclose that fact when the jurors were asked whether they or their family members had been a "victim" of a violent crime.   Petitioner claims that she first learned this information from Farren's sister, who was incarcerated with her, in October of 2016. (ECF No. 10, Ex. 25 at 46-48).   Petitioner fails to explain the nearly 13-year gap between her initial allegations involving her contact with Farren in May of 2004 and the claims she advanced in her sixth habeas petition filed in 2017.

As further noted by Respondent, following the circuit court's February 4, 2010 order appointing Lela Walker to assist Petitioner in filing a successive habeas petition, (ECF No. 10, Ex. 14), Walker filed a motion for extension of time and noted that she had retained a private investigator to interview "jurors that may still be living." (ECF No. 10, Ex. 15).   Despite this alleged investigation, no claims concerning juror misconduct were raised in Petitioner's fourth habeas petition, which was subsequently filed on September 23, 2013.   (ECF No. 10, Ex. 17).   Moreover, Petitioner effectively disavowed such claims when she acknowledged in that petition that "qualifications of the jury, improper jury selection process . . . [and] the issues of sufficiency of the evidence . . . have been fully adjudicated."   (*Id.* at 2).

To the extent that Petitioner is pursuing the jury pressure claim in her federal petition, that claim is untimely filed even under § 2244(d)(1)(D).   By her own admission, Petitioner learned of that information in May of 2004 and presented it to the SCAWV in her Amendment to Writ of Habeas Corpus on August 26, 2004. (ECF No. 10, Ex. 10). The SCAWV refused to issue the requested writ on September 30, 2004. (ECF No. 10, Ex. 11).   Petitioner subsequently filed a third habeas petition in the circuit court on December 2, 2004.   (ECF No. 10, Ex. 1 at 4).   That petition effectively tolled the beginning of the one-year limitation period under AEDPA with respect to the jury pressure claim.   On March 17, 2005, the Petitioner's petition was denied by the circuit court.   (ECF No. 10, Ex. 1 at 5).   Pursuant to Rule 5(b) of the West Virginia Rules of Appellate Procedure, the Petitioner had thirty days from the entry of that judgment to appeal the circuit court's order to the SCAWV.   However, Petitioner did not appeal that order; therefore, the one-year limitation period under subsection (D) with respect to the

jury pressure claim began to run on April 16, 2005, and expired on April 16, 2006. Yet, Petitioner did not file a federal habeas petition by that deadline. Nor did she file any other state petitions that further tolled the limitations period. Therefore, her jury pressure claim is untimely.

Moreover, despite having knowledge of alleged issues concerning Farren's jury service since 2004, and despite the subsequent investigation that was allegedly conducted by her habeas counsel between 2010 and 2013, Petitioner fails to explain why she did not acquire the information supporting the juror disqualification claim involving Farren until 2016, and she further fails to establish that she acted with due diligence to ascertain that information. Even assuming, arguendo, that learning of the factual basis for the jury pressure claim from Farren in May of 2004 did not provide the factual predicate for the alleged juror disqualification claim also involving Farren, Petitioner should have, nonetheless, discovered the basis for that claim during the investigation preceding the filing of her fourth petition filed on September 23, 2013. Petitioner offers no argument or evidence as to why she could not have learned of this information during that time. Moreover, Petitioner's fourth petition specifically acknowledged that claims concerning jury qualifications and jury selection had already been fully adjudicated. (ECF No. 10, Ex. 17 at 2). Thus, that petition does not appear to qualify as a post-conviction petition for collateral relief that would start or toll the statute of limitations with respect to Ground Three.

Even if this court were to construe Petitioner's September 2013 as being a post-conviction petition that would start or toll the statute of limitations as to Ground Three only, that petition was denied by the circuit court on January 22, 2014. (ECF No. 10, Ex.

18).   The SCAWV affirmed that decision on April 13, 2015. (ECF No. 10, Ex. 22).

Therefore, if the one-year limitation period began to run on that claim no later than May

13, 2015, when the mandate concerning that decision was presumably issued,[11] any

federal petition concerning the juror disqualification claim was required to be filed by

May 13, 2016.

On April 18, 2016 (prior to this alternative AEDPA deadline), Petitioner filed her

fifth petition concerning ineffective assistance of habeas counsel.   (ECF No. 10, Ex. 23).

Because the fifth petition did not specifically address the juror misconduct claims, it

arguably fails to count as a petition that tolled the statute of limitations under subsection

(D).   Nonetheless, out of an abundance of caution, the undersigned will include the filing

of that petition as a tolling event in the calculation of the statute of limitations.

At the time the fifth petition was filed, 340 days of the 365-day limitation period

under subsection (D) had expired, leaving 25 days remaining under the statute.   The

circuit court denied Petitioner's fifth petition on June 10, 2016, and Petitioner did not

appeal that decision.   (ECF No. 10, Ex. 23).   Thus, the limitation period began to run

again on October 10, 2016 (when the period to appeal that decision ended) and it expired

on or about November 4, 2016.   Thus, Petitioner's subsequent filing of her sixth state

court habeas petition on June 27, 2017 (which did address these juror misconduct issues)

---

[11]  In his calculations of the limitation period, Respondent improperly includes the period for filing a
petition for a writ of certiorari after the resolution of Petitioner's habeas appeals.   With respect to collateral
state post-conviction filings (as opposed to direct appeals), the tolling period does not include the time for
seeking certiorari.   Rather, the limitations period commences on the date that the mandate is issued by the
SCAWV.   *See Lawrence v. Fla.*, 549 U.S. 327 (2007) (one-year statute of limitations for seeking federal
habeas corpus relief from a state-court judgment was not tolled during the pendency of petition for
certiorari seeking review of denial of state postconviction relief).   Therefore, the undersigned will disregard
Respondent's calculations and will calculate the limitations period in accordance with *Lawrence.*

has no bearing on the running of the statute of limitations, because it had already expired when that petition was filed.

Accordingly, even under the most liberal calculation of AEDPA's statute of limitations and application of its tolling provisions, Petitioner's claims concerning juror misconduct are untimely and are not subject to any further tolling.   For these reasons, Petitioner's claims raised in Ground Three of her § 2254 are also time-barred and should be dismissed.

## **RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Petitioner's § 2254 petition is not timely under 28 U.S.C. § 2244(d)(1) and Petitioner has failed to establish any facts warranting equitable tolling of the statute of limitations to allow this federal court to consider the claims in her petition. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion to Dismiss (ECF No. 10) and **DISMISS** Petitioner's § 2254 petition (ECF No. 1) under 28 U.S.C. § 2244(d)(1) as being time-barred.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge.   Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.   Extension of this time period may be granted by the

presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).   Copies of such objections shall be served on the opposing party and Judge Volk.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to Petitioner, and to transmit a copy to counsel of record.

July 21, 2022

Dwane L. Tinsley
United States Magistrate Judge

24